UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Nophadonh L. Saygnarath and Chanta Saygnarath,

        Plaintiffs,

v.

BNC Mortgage, Inc. and Ace Mortgage Funding, LLC,

        Defendants.

Civil No. 06-3465 (DWF/AJB)

**MEMORANDUM OPINION AND ORDER**

_____

Jaren L. Johnson, Esq., BenePartum Law Group, PA, counsel for Plaintiffs.

Brent R. Lindahl, Esq., Molly M. Borg, Esq., and Robert J. Pratte, Esq., Briggs & Morgan; and DeAnne M. Hilgers, Esq., and James M. Lockhart, Esq., Lindquist & Vennum PLLP, counsel for Defendant BNC Mortgage Inc.

Robert R. Reinhart, Esq., and Steven J. McLaird, Esq., counsel for Defendant Ace Mortgage Funding, LLC.
_____

The above-entitled matter came before the undersigned United States District Court Judge on April 16, 2007, pursuant to Plaintiffs Nophadonh L. Saygnarath and Chanta Saygnarath's (collectively "the Saygnaraths") Motion for a Temporary Restraining Order ("TRO"). Specifically, the Saygnaraths request a TRO to enjoin the execution of a Scott County Minnesota District Court Order granting a Writ of Recovery and Order to Vacate the real property located at 1757 Greenway Avenue, Shakopee,

Minnesota ("the Property") during the pendency of the action before this Court. For the reasons set forth below, the Court denies the motion.

## BACKGROUND

On August 24, 2005, the Saygnaraths signed a loan agreement with Defendant BNC Mortgage, Inc. ("BNC Mortgage") for a mortgage on the Property, where the Saygnaraths have been living since 1996. In May 2006, after the Saygnaraths failed to make payments under the loan, Mortgage Electronic Registration System, Inc. ("MERS"),[1] as nominee of BNC Mortgage, notified the Saygnaraths that it planned to commence foreclosure proceedings. MERS then commenced foreclosure proceedings and on June 16, 2006, the Property was sold to BNC Mortgage at a Sheriff's sale. The Saygnaraths did not redeem within the six-month statutory redemption period, which expired in December 2006.

On August 24, 2006, the Saygnaraths commenced a federal lawsuit against BNC Mortgage alleging that BNC Mortgage violated the Truth in Lending Act ("TILA").[2]

---

1   MERS is a databank that tracks ownership interests in mortgage instruments for its members. MERS pursued the foreclosure and eviction actions as nominee for BNC Mortgage.

2   Prior to filing this lawsuit, the Saygnaraths allege they sent a letter to BNC Mortgage providing notice of rescission pursuant to 12 C.F.R. § 226.23(a)(2). At oral argument, the Saygnaraths' attorney stated that he does not have a copy of this letter and that he does not know exactly on what date this letter was sent, but he conceded that the letter was sent after the foreclosure sale on June 15, 2006. BNC Mortgage responded that its files do not reflect such a letter and that it first received notice with the filing of this lawsuit on August 24, 2006.

(Footnote Continued on Next Page)

Specifically, the Saygnaraths allege that BNC Mortgage failed to provide the requisite number of copies of the right to rescind and understated the amount financed. The Saygnaraths allege that because of these violations, they are entitled to rescind the mortgage pursuant to 15 U.S.C. § 1635 and 12 C.F.R. § 226.23.

On January 26, 2007, MERS served the Saygnaraths with an eviction summons and complaint. On March 6, 2007, an eviction hearing was held before a Scott County Minnesota District Court Judge, and on March 28, 2007, that court entered judgment against the Saygnaraths, granting MERS's request for eviction. The court, however, stayed execution of the eviction order until April 6, 2007, allowing the Saygnaraths time to seek relief from this Court. On April 5, 2007, the Saygnaraths filed a Motion for a TRO with this Court, asserting that the state court eviction order must be enjoined because the Court has not yet adjudicated whether the Saygnaraths are entitled to rescission of the mortgage loan under the TILA.

## DISCUSSION

### I. Standard for Temporary Restraining Order

A temporary restraining order may be granted only if the moving party can demonstrate: (1) a likelihood of success on the merits; (2) that the movant will suffer

---

(Footnote Continued From Previous Page)

irreparable harm absent the restraining order; (3) that the balance of harms favors the movant; and (4) that the public interest favors the movant. *Dataphase Sys., Inc. v. C L Sys., Inc.*, 640 F.2d 109, 113 (8th Cir. 1981). None of the factors by itself is determinative; rather, in each case the factors must be balanced to determine whether they tilt toward or away from granting injunctive relief. *Taylor Corp. v. Four Seasons Greetings, LLC*, 315 F.3d 1039, 1041 (8th Cir. 2003); *West Publ'g Co. v. Mead Data Cent., Inc.*, 799 F.2d 1219, 1222 (8th Cir. 1986). The party requesting the injunctive relief bears the "complete burden" of proving all the factors listed above. *Gelco Corp. v. Coniston Partners*, 811 F.2d 414, 418 (8th Cir. 1987); *see also Watkins, Inc. v. Lewis*, 346 F.3d 841, 844 (8th Cir. 2003).

> A.   **Likelihood of Success on the Merits**

The first *Dataphase* factor requires that the movant establish a substantial probability of success on the merits of its claim. *Dataphase*, 640 F.2d at 114. The Saygnaraths claim that BNC Mortgage violated the TILA. Specifically, the Saygnaraths assert that they did not receive the four copies of the notice of their right to rescind their August 24, 2005 mortgage transaction that they were entitled to receive under 15 U.S.C. § 1635 and 12 C.F.R. § 226.23(b) and that BNC Mortgage understated the amount financed by more that $600 in violation of 12 C.F.R. § 226.18(d)(1)(i). The Saygnaraths assert that because they did not receive proper notice of their right to rescind, they had a continuing right to rescind the mortgage loan transaction up to the date they sent written notification

to BNC Mortgage rescinding the transaction.[3]  Conversely, BNC Mortgage contends that the Saygnaraths in fact received the required notice and all material disclosures on August 24, 2005.  Moreover, BNC Mortgage asserts that the Saygnaraths do not have a right to rescind because that right was relinquished at the time of the Sheriff's sale of the Property.

The Court agrees with BNC Mortgage and finds that the Saygnaraths no longer have a right to rescind.  Here, the Property was sold on June 16, 2006, at a foreclosure sale.  The Saygnaraths sent their notice-of-intent-to-rescind letter after that date.  The regulations implementing the TILA explain that if BNC Mortgage did not provide the Saygnaraths with proper notice of the right to rescind or provide proper material disclosures, the Saygnaraths' "right to rescind [would have] expire[d] 3 years after consummation, upon transfer of all the consumer's interest in the property, *or upon sale of the property, whichever occurs first*."  12 C.F.R. § 226.23(a)(3) (emphasis added).  In other words, any right to rescind by the Saygnaraths, at a minimum, expired upon the foreclosure sale of the Property.  *See id.*; *see also Williams v. G.M. Mortgage Corp.*, No. 03-CV-74788-DT, 2004 WL 3704081 (E.D. Mich. Aug. 18, 2004) (concluding that case law supports that "after a foreclosure sale, a mortgage is extinguished, and, thus, even in a redemption state like Michigan, an unexpired TILA right to rescind the

---

3      The Saygnaraths state that BNC Mortgage also violated 12 U.S.C. § 2607 by breaching its fiduciary duties by failing to disclose fees, but they did not address this argument in their brief.  Therefore, the Court need not address this claim for the purposes
(Footnote Continued on Next Page)

mortgage is likewise terminated") (internal quotations omitted).  Therefore, even if the Saygnaraths' notice or material disclosure claims had merit, [4] the Saygnaraths' overarching claim for rescission is still not likely to succeed.  Therefore the Court finds that the first *Dataphase* factor favors BNC Mortgage.

### B.     Irreparable Harm

The second factor that the movant must establish is that irreparable harm will result if injunctive relief is not granted and that such harm will not be compensable by money damages.  *See Packard Elevator v. I.C.C.*, 782 F.2d 112, 115 (8th Cir. 1986).  A showing of speculative harm is insufficient to meet this burden.  *Id*.  Failure to show irreparable harm alone is a sufficient basis for a court to deny injunctive relief.  *Gelco Corp.*, 811 F.2d at 420.  If denying an injunction results in eviction, then the irreparable harm element is likely met.  *See Higbee v. Starr*, 698 F.2d 945, 947 (8th Cir. 1983).

---

(Footnote Continued From Previous Page)
of this motion.
4      Because the Court finds that the Saygnaraths' claim for rescission is not likely to succeed—regardless of whether the Saygnaraths received four copies of the notice of their right to rescind and whether BNC Mortgage understated the amount financed—the Court need not consider the Saygnaraths' arguments pertaining to the alleged lack of proper notice or the "understatement."  Nonetheless, the Court sees merit in BNC Mortgage's analysis contradicting the merit of the Saygnaraths' arguments.  The Saygnaraths concede that there are three signed right to rescind notices in the record. Therefore, at a minimum, one of the Saynaraths received two notices acknowledging such and the other at least received one and acknowledged the receipt of two.  Additionally, the Saynaraths allege that the amount financed was understated by $620.00.  As BNC Mortgage explains, however, the closing fee was overstated by $220.00 and the cost of the appraisal ($400.00) was included in the finance charge when it is not required to be included.  *See* 12 C.F.R. § 226.4(c)(7)(iv).

The Saygnaraths assert that they will be irreparably harmed if they are evicted from the Property because it is their primary residence. They assert that if they are evicted, their life will be substantially disrupted, and their ability to find suitable replacement housing is questionable. BNC Mortgage contends that the Saygnaraths will not suffer irreparable harm because there is no basis for the Saygnaraths to seek rescission under the TILA. Moreover, BNC Mortgage asserts that the Saygnaraths have not proffered any reason why this injunctive relief is their only recourse. Specifically, BNC Mortgage asserts that the Saygnaraths have done nothing to stop either the foreclosure action or the eviction action other than the filing of this motion.

Although the Court notes that the Saygnaraths have not explained why their life will be substantially disrupted and why their ability to find suitable replacement housing is questionable, the Court nonetheless recognizes the adverse effects that flow from eviction and finds that this *Dataphase* factor tips slightly in favor of the Saygnaraths.

    **C.**    **Balance of Harms**

The third *Dataphase* factor to be considered is whether the harm to the movant in the absence of injunctive relief outweighs the potential harm that granting injunctive relief may cause to the non-movant. *See Dataphase*, 640 F.2d at 114. The Saygnaraths assert that they would face losing their home and having their life substantially disrupted if the Court does not issue injunctive relief. BNC Mortgage, on the other hand, asserts that it will be greatly harmed, should the injunction issue, by the continued inability to earn interest income from the Property and by its continued payment of property taxes on

the Property while being deprived of the occupancy of the Property.

While the Court considers both parties' concerns valid concerns, the Court finds that losing a basic necessity such as shelter is a greater harm to an individual couple than a company's temporary loss of income.[5]  Therefore, the balance of harms tips in favor of the Saygnaraths.

### D.     Public Interest

The final *Dataphase* factor to be considered by the Court is whether injunctive relief is in the public's interest.  *See Dataphase*, 640 F.2d at 114.  The Saygnaraths assert that public policy favors protecting the victims of aggressive lending tactics and lending procedures that do not comply with federal statutes.   BNC Mortgage responds, asserting that there is neither any evidence nor any allegation in the Complaint of any predatory lending practices by BNC Mortgage.  Therefore, the Saygnaraths' policy argument is unsupported.  Further, BNC Mortgage asserts that public policy supports the payment of validly created debts.

The Court agrees with both parties' policy arguments.  However, in light of the fact that the Saygnaraths have not shown that they are likely to succeed on the merits, thereby making the mortgage loan a validly created debt, and in light of the fact that there are no allegations in the Complaint nor evidence in the record supporting predatory

---

5      At oral argument, the parties were unaware of the amount of equity the Saygnaraths had in the Property.

lending practices, the public interest is best served by denying the injunctive relief requested.

## CONCLUSION

Because the first *Dataphase* factor weighs heavily in BNC Mortgage's favor, the second and third *Dataphase* factors weigh slightly in the Saygnaraths' favor, and the fourth *Dataphase* factor weighs in BNC Mortgage's favor, the Court finds that the Saygnaraths have not met their burden and that a TRO is not warranted.  The Court assumes, absent negotiation of the parties that involve the merits of the federal action, that the parties will negotiate an appropriate move-out date for the Saygnaraths.  In so doing, the Court notes that while the Court is unfamiliar with the Saygnaraths' current circumstances, and without knowing what efforts the Saygnaraths have already made, 30-40 days from the date of this Order strikes the Court as reasonable.

Accordingly, **IT IS HEREBY ORDERED** that**:**

1. Plaintiffs' Motion for a Temporary Restraining Order (Doc. No. 24) is **DENIED**.


Dated:  April 17, 2007           s/Donovan W. Frank
                                 DONOVAN W. FRANK
                                 Judge of United States District Court